UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KAJUAN D. HALE,

           Petitioner,

                                 CASE NO. 2:06-CV-14065

    v.                          JUDGE ARTHUR J. TARNOW
                                 MAGISTRATE JUDGE PAUL J. KOMIVES

JEFFREY WOODS,

           Respondent.[1]

_____/


# REPORT AND RECOMMENDATION


*Table of Contents*

I.     RECOMMENDATION .................................................................. 2
II.    REPORT ................................................................................ 2
    A.    *Procedural History* ......................................................... 2
    B.    *Factual Background Underlying Petitioner's Conviction* ............................ 5
    C.    *Procedural Default* .......................................................... 6
    D.    *Standard of Review* .......................................................... 7
    E.    *Directed Verdict/Sufficiency of the Evidence (Claims II & V)* ...................... 9
         1.    *Directed Verdict* ................................................... 9
         2.    *Sufficiency of the Evidence* ......................................... 12
              a. Clearly Established Law ........................................... 12
              b. Analysis ......................................................... 15
    F.    *Prosecutorial Misconduct (Claims III & IV)* ...................................... 17
         1.    *Clearly Established Law* ............................................. 17
         2.    *Analysis* ........................................................... 17
    G.    *Blakely (Claim I)* ........................................................... 22
    H.    *Ineffective Assistance of Counsel (Claims VI & VII)* .............................. 26
         1.    *Clearly Established Law* ............................................. 26
         2.    *Trial Counsel* ...................................................... 28
         2.    *Appellate Counsel* .................................................. 29
    I.    *Evidentiary Hearing* ........................................................ 30
    J.    *Recommendation Regarding Certificate of Appealability* ............................ 35
         1.    *Legal Standard* ..................................................... 35
         2.    *Analysis* ........................................................... 36
    K.    *Conclusion* ................................................................. 37
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ....................................... 37

---

[1]By Order entered this date, Jeffrey Woods has been substituted in place of Andrew Jackson as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Kajuan D. Hale is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

        2.      On July 19, 2002, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On August 2, 2002, he was sentenced to a term of 35-60 years' imprisonment on the murder conviction, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      THE ASSISTANT PROSECUTOR'S STATEMENTS AMOUNTED TO
                PROSECUTORIAL MISCONDUCT REQUIRING A NEW TRIAL.

        II.     THE TRIAL JUDGE ABUSED HIS DISCRETION IN SENTENCING
                DEFENDANT TO A TERM WHICH EXCEEDED THE GUIDELINES
                AND WHICH VIOLATES THE PRINCIPLE OF PROPORTIONALITY.

The court of appeals found no merit to petitioner's claim challenging his conviction, and affirmed the conviction.  However, the court of appeals concluded that the trial court had erred in relying on an improper factor in departing from the sentencing guidelines, and remanded for the trial court to determine if it would impose the same sentence without consideration of that factor.  *See People v. Hale*, No. 243733, 2003 WL 22961696 (Mich. Ct. App. Dec. 16, 2003) (per curiam).  Neither

petitioner nor the prosecutor sought leave to appeal in the Michigan Supreme Court.

4.     On remand, the trial court resentenced petitioner to a term of 28-60 years' imprisonment on the murder conviction.  Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

> THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS AT SENTENCING BY DEPARTING ABOVE THE STATUTORY SENTENCING GUIDELINE RANGE BASED ON ALLEGATIONS NOT CHARGED BY THE PROSECUTOR, NOT FOUND BEYOND A REASONABLE DOUBT BY THE JURY, AND NOT ADMITTED BY DEFENDANT; THE TRIAL COURT ALSO ERRED BY FAILING TO SPECIFY THE NEW REASONS FOR DEPARTURE; MR. HALE IS ENTITLED TO A RESENTENCING BASED ON APPRENDI V NEW JERSEY AND BLAKELY V WASHINGTON.  US CONST AM VI.

The court of appeals rejected petitioner's claim, and affirmed his sentence.  *See People v. Hale*, No. 254412, 2005 WL 2401767 (Mich. Ct. App. Sept. 29, 2005) (per curiam).

5.     Petitioner sought leave to appeal in the Michigan Supreme Court, raising his *Blakely* claim.  The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Hale*, 474 Mich. 983, 707 N.W.2d 198 (2005).

6.     On September 15, 2006, petitioner filed an application for the writ of habeas corpus in this Court, raising his *Blakely* claim.  After respondent filed his answer, petitioner moved for a stay so that he could exhaust further claims in the state courts.  The Court granted the motion on November 20, 2007.

7.     Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

> I.     DEFENDANT-APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS WAS DENIED WHEN THE TRIAL COURT COMMITTED CLEAR ERROR IN DENYING HIS REQUEST FOR A DIRECTED VERDICT OF ACQUITTAL UNDER THE ERRONEOUS FACT THAT THE VICTIM WAS UNARMED.

II.     THE CUMULATIVE EFFECT OF THE UNOBJECTED TO PROSECUTORIAL MISCONDUCT ERRORS DENIED DEFENDANT-APPELLANT OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL.

III.    THE CUMULATIVE EFFECT OF THE UNOBJECTED TO ERRORS BY THE PROSECUTOR FORCED THE JURY INTO A COMPROMISE VERDICT OF SECOND DEGREE MURDER VIOLATING STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL.

IV.     DEFENDANT-APPELLANT'S SECOND-DEGREE MURDER CONVICTION WAS RENDERED UPON INSUFFICIENT EVIDENCE WHERE THERE WAS AN ADEQUATE PROVOCATION TO REDUCE THE CRIME TO VOLUNTARY MANSLAUGHTER VIOLATING STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL.

V.      APPELLATE COUNSEL'S PERFORMANCE WAS DEFICIENT AND PREJUDICIAL IN FAILING TO RAISE THE ABOVE CITED ISSUES IN DEFENDANT-APPELLANT'S APPEAL AS OF RIGHT.

VI.     DEFENDANT-APPELLANT'S SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED DURING TRIAL WHERE DEFENSE COUNSEL FAILED TO OBJECT TO REPEATED FORMS OF PROSECUTORIAL MISCONDUCT DURING OPENING STATEMENTS AND CLOSING ARGUMENTS DEPRIVING DEFENDANT OF THIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.

The trial court denied petitioner's motion for relief from judgment, concluding that the claims were without merit and that petitioner could therefore not establish actual prejudice entitling him to relief under MICH. CT. R. 6.508(D)(3)(b). The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Hale*, 486 Mich. 900, 780 N.W.2d 821 (2010); *People v. Hale*, No. 290829 (Mich. Ct. App. Aug. 26, 2009).

8.     On July 6, 2010, petitioner filed an amended application, raising as grounds for relief the *Blakely* claim that he raised in his initial petition (Claim I), as well as the six claims that he

4

raised in his state court motion for relief from judgment (Claims II-VII).  Respondent subsequently

filed a motion to dismiss, arguing that the amended petition was not filed in accordance with the

Court's order granting petitioner's motion for stay.  Petitioner filed a response to this motion as well

as a motion to reopen the habeas proceedings.  On March 11, 2011, the Court entered an Order

granting petitioner's motion to reopen and denying respondent's motion to dismiss.

9.       Respondent filed a supplemental answer on May 10, 2011.  He contends that

petitioner's claims are both without merit and barred by petitioner's procedural default in the state

courts.

10.      Petitioner filed a reply to respondent's answer on June 27, 2011.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the shooting death of Nelson Hardiman outside the

Tippin' Inn Lounge in Detroit on March 16, 2001.  The principal evidence in the case came through

the testimony of Antonio Vernon and Reginald Marshall, who witnessed the altercation between

petitioner and Hardiman, and other witnesses to the confrontation.  The evidence was accurately

summarized in the prosecutor's brief to the Michigan Court of Appeals:

On March 16, 2011, Mr. Nelson Hardiman, the victim in this case,
accompanied two of his cousins and his best friend to the Tippin' Inn Lounge.  At
the lounge, Mr. Hardiman observed defendant repeatedly insulting two women.
Defendant refused to allow the women to play pool on a table that he and an
associate had been using.  When the women got upset, defendant and his associate
called the women "bitches" and various other terms of degradation.  Mr. Hardiman
did not know the women, but he came to their assistance that night.  Mr. Hardiman
told the defendant and his associate that they were being disrespectful to the women,
and urged defendant to let them play pool.  After expressing his disgust at Mr.
Hardiman's intrusion, defendant exited the lounge.
Once outside the lounge, defendant retrieved a handgun and waited near the
entrance to the establishment.   After Mr. Hardiman exited the lounge, he and
defendant fought.  One witness, Mr. Marshall, testified that Mr. Hardiman started the
fight by hitting defendant with a gun.  Another witness, Mr. Vernon, testified that he

5

did not see a gun in Mr. Hardiman's hand during the fight. After fighting on the ground for some time, Mr. Hardiman attempted to run from the defendant. As Mr. Hardiman began to run away, his back to defendant, defendant drew a gun and fired one or more shots into the victim's back.

With the victim on the ground, defendant walked to the victim, stood over him, and fired more bullets into the victim. In all, defendant shot Mr. Hardiman seven times. The victim died as a result of those gunshot wounds.

After defendant had riddled the victim with bullets, he spat on the body. Defendant then got into his vehicle and attempted to run over the victim. He then left the scene.

At trial, Marshall testified that the victim had a gun in his hand when defendant shot and killed him. But Vernon testified that he witnessed the event, and did not see a gun in the victim's hand.

Pl.-Appellant's Br. on App., in *People v. Hale*, No. 243733 (Mich. Ct. App.), at 3-4 (citations to trial transcript omitted). More specifically, Marshall testified that the initial confrontation had de-escalated, Hardiman took Marshall's gun and hit petitioner with it and tackled him. A bystander fired a gun into the air, startling Hardiman, who then attempted to flee. *See* Trial Tr., Vol. II, at 165-68.

## C.    *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts, based on various failures of petitioner to properly raise his claims in the state courts. The Court should decline to resolve the default issue, and should proceed to the merits of petitioner's claims. Petitioner contends that his trial and appellate attorneys were ineffective for failing to properly raise his claims in the state courts. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that counsel was ineffective petitioner must show, *inter alia*, that his claims are meritorious. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Given that the cause and prejudice inquiry merges with

6

an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits

of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D.

Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527

U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits

mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Directed Verdict/Sufficiency of the Evidence (Claims II & V)*

    In his second claim, petitioner contends that the trial court erred in denying his motion for a directed verdict at the close of the evidence because the trial court erroneously concluded that the victim was unarmed. In his fifth claim, petitioner contends that the evidence was insufficient to prove his guilt of second degree murder beyond a reasonable doubt because the evidence showed that there was adequate provocation to reduce the crime to voluntary manslaughter. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

    1.    *Directed Verdict*

    At the close of the evidence, petitioner's counsel moved for a directed verdict on the murder charge, arguing that the evidence did not show premeditation or deliberation to support a conviction for first degree murder, but only that petitioner's actions were done in the heat of anger and passion to support a conviction for voluntary manslaughter. *See* Trial Tr., Vol. III, at 141-43. The trial court denied the motion, reasoning that viewed in the light most favorable to the prosecution, "there is evidence from which a jury could conclude that the deceased was not armed with a dangerous weapon, that any danger to the Defendant was over, that the deceased was moving away from the

9

Defendant, his back being to the Defendant when the shot was fired, and the multiple shots, and the manner of their imposition indicate ample time for the Defendant to have premeditated." *Id.* at 144. Petitioner contends that the conclusion that the victim was unarmed was erroneous, and but for this erroneous conclusion his motion for a directed verdict would have been granted. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, petitioner cannot show that the denial of his motion for a directed verdict and the submission of the first degree murder charge to the jury violated his constitutional rights, because the jury acquitted him of the first degree murder charge. Although, as discussed below, the Supreme Court has clearly established that it is a due process violation to *convict* a defendant on a charge for which there is insufficient evidence, "the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." *Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006) (Gadola, J.); *see also*, *Thomas v. Bell*, No. 2:06-13165, 2008 WL 268892, at *5 (E.D. Mich. Jan. 29, 2008) (Borman, J.); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004) (Cleland, J., adopting Report of Majzoub, M.J.). The acquittal on the greater charge renders the submission of that charge harmless. *See Long*, 450 F. Supp. 2d at 752; *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (Tarnow, J.).

Second, even if such a claim were cognizable, petitioner cannot show that there was insufficient evidence to support the first degree murder charge. Even if the trial court erred in concluding that a jury could find that the victim was unarmed, there was still sufficient evidence to support a finding that petitioner premeditated the killing. Under Michigan law, "[p]remeditation is measured in time; time to permit a reasonable person to subject the nature of his response to a

second look." *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984). "The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing." *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786 (1995). Relevant factors include the relationship of the parties, the defendant's actions prior to the killing, the circumstances of the killing, and the defendant's conduct after the killing. *See id.*; *Brown*, 137 Mich. App. at 407, 358 N.W.2d at 597. Further, because first degree murder requires premeditation and deliberation rather than simply malice aforethought (as is required for second degree murder), the actor must have the specific intent to kill in order to be convicted of first degree murder. *See People v. Hart*, 437 Mich. 898, 898, 465 N.W.2d 328, 328 (1991); *People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 715 n.102, 299 N.W.2d 304, 320 n.120 (1980). As with premeditation, "[t]he specific intent to kill may be proven by inference from any facts in evidence." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (internal quotation omitted). Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'" *Id.* (quoting *People v. Taylor*, 422 Mich. 554, 375 N.W.2d 1, 8 (1985)).

Here, viewed in the light most favorable to the prosecution, there was sufficient evidence from which a jury could have concluded that petitioner premeditated the killing. Although the initial dispute arose from a fight inside the bar, the evidence also showed that petitioner exited the bar first, retrieved a handgun, and waited near the entrance of the bar for the victim to emerge. The evidence further showed that after petitioner and the victim fought, the victim attempted to run away, and as the victim was fleeing petitioner drew his gun and fired into the back of the victim. Petitioner then

walked to where the victim had fallen, and fired several more bullets into the victim, shooting him a total of seven times. Petitioner's retrieving a gun and waiting for the victim, shooting the victim in the back as he was fleeing, and firing several more shots into the victim after he had fallen, all support an inference that petitioner had adequate time to reflect on his actions and intended to kill the victim. Thus, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      2.     *Sufficiency of the Evidence*

Petitioner also contends that the evidence was insufficient to show that he committed second degree murder, because the evidence established that he acted under adequate provocation to mitigate the crime to voluntary manslaughter. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      *a. Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4

(2011) (per curiam).   The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).   Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").   It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326.   As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Id*. at 2065.   Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, ___ S. Ct. ___, 2012 WL 2076341, at *4 (June 11, 2012) (per curiam).   A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).   Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,'

but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. Second degree murder consists of four elements: (1) a death; (2) caused by an act of the defendant; (3) with malice; and (4) without lawful justification or excuse. *See People v. Smith*, 478 Mich. 64, 70, 731 N.W.2d 411, 414-15 (2007) (citing *People v. Goecke*, 457 Mich. 442, 464, 579 N.W.2d 868 (1998)). "Some evidence must be presented regarding each element of the crime or from which those elements may be inferred." *People v. Goecke*, 457 Mich. 442, 470, 579 N.W.2d 868 (1998) (citing *People v. Doss*, 406 Mich. 90, 100-01, 276 N.W.2d 9 (1979)). In order to show malice, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). The prosecution may establish the elements of a crime through circumstantial evidence that creates a reasonable inference that an element is satisfied. *See Kelly v. Jackson*, 353 F. Supp.2d. 887, 891 (E.D. Mich. 2005) (citing *People. v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868 (1998)). As the Supreme Court has explained:

> Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

14

*Holland v. United States*, 348 U.S. 121, 140 (1954).

Under Michigan law voluntary "[m]anslaughter is murder without malice." *People v. Mendoza*, 468 Mich. 527, 534, 664 N.W.2d 685, 689 (2003). "Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation . . . characterizes the offense of manslaughter [and] separates it from murder." *People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346, 350 (1991). Thus, "[u]nder Michigan law, 'voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control.'" *Todd v. Stegal*, 40 Fed. Appx. 25, 29 (6th Cir. 2002) (quoting *People v. Fortson*, 202 Mich. App. 13, 19, 507 N.W.2d 763, 767 (1993)). In other words, "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich. at 535-36, 664 N.W.2d at 690. Not every form of provocation, however, will suffice to negate the malice necessary for murder. As the Michigan Supreme Court has explained,

> [t]he provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. . . .
> In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control. Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter. The law cannot countenance the loss of self-control; rather, it must encourage people to control their passions.

*Pouncey*, 437 Mich. at 389, 471 N.W.2d at 350; *see also*, *People v. Sullivan*, 231 Mich. App. 510, 518, 586 N.W.2d 578, 582 (1998).

*b. Analysis*

15

Petitioner does not dispute that there was sufficient evidence to show that he shot the victim or that the victim died as a result of the shooting. Rather, petitioner contends that the evidence was insufficient to show that he acted with malice, because the evidence did not prove beyond a reasonable doubt that he did not act in the heat of passion under adequate provocation. Viewed in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that petitioner did not act in the heat of passion under an adequate provocation, and thus that he was guilty of second degree murder. There was evidence presented that, after the initial confrontation inside the bar, petitioner retrieved a gun and waited for the victim to exit. From this evidence, a rational trier of fact could have inferred that petitioner reinitiated the confrontation, and thus did not act under adequate provocation because he was the initial aggressor. *See People v. Brooks*, No. 271412, 2008 WL 2938549, at *2 (Mich. Ct. App. July 31, 2008) (per curiam). Further, there was evidence presented that the victim was shot as he attempted to flee, and that petitioner then walked up to the victim and shot him several more times as he lay on the ground. This evidence supports a finding that petitioner had an adequate opportunity for his passions to cool and to consider his actions. *See Sherman v. Howes*, No. 1:06-cv-369, 2009 WL 4250763, at *13 (W.D. Mich. Nov. 24, 2009). The *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court. *Coleman*, 132 S. Ct. at 2064. The jury was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of the evidence presented that petitioner reinitiated the confrontation and shot the victim multiple times as he fled and lay wounded, the jury's conclusion that petitioner acted with malice does not "fall below the threshold of bare rationality." *Id*. at 2065. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

16

F.      *Prosecutorial Misconduct (Claims III & IV)*

Petitioner next contends that he was denied a fair trial by several instances of prosecutorial misconduct.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* (internal quotation omitted).  *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim.  *Parker v. Matthews*, ___ S. Ct. ___, ___, 2012 WL 2076341, at *5 (June 11, 2012).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'"  *Parker*, ___ S. Ct. at ___, 2012 WL 2076341, at *6 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In reviewing whether prosecutorial comments deprived a defendant of a fair trial, a court may not consider the remarks in isolation, but must consider the remarks in the context of the entire trial, including the prosecutor's appropriate comments, the court's instructions to the jury, and the evidence presented in the case.  *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974).  Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone."  *Young*, 470 U.S. at 11.

17

2.     *Analysis*

Petitioner points to a number of comments made by the prosecutor, during both opening statement and closing argument, that he contends deprived him of a fair trial.  The Court should reject this claim.

Petitioner first contends that he was denied a fair trial by comments which were disparaging and inflammatory.  Specifically, petitioner complains that it was improper for the prosecutor to state during opening statements that the victim had been "murdered" rather than "killed."  *See* Trial Tr., Vol. I, at 108, 109, 110, 111, 113.  Petitioner also contends that he was denied a fair trial by the prosecutor's closing argument, in which the prosecutor stated that although the victim was not "an angel" and was "out of line" in hitting petitioner with the gun, the victim "did not deserve to be shot in the street and left to die like a dog," *id*., Vol. III, at 107; *see also*, *id*. at 111, or to be "gunned down in a street . . . like he was nothing, like he was a piece of garbage."  *Id*. at 153; *see also*, *id*. at 190.  The Michigan Court of Appeals, reviewing the claim for plain error, rejected petitioner's argument, concluding that the reference to "murder" rather than a "killing" was not improper, and that the statements referring to the victim were not improperly inflammatory.  *See Hale*, 2003 WL 22961696, at *2.  This determination is reasonable.  The prosecutor's reference to the crime as a "murder," rather than a "killing," did not deprive petitioner of a fair trial, in light of the fact that the prosecutor's language merely tracked the language of the charges against petitioner and the jury was instructed that the statements of the attorneys was not evidence.  *See Anderson v. Yates*, No. CV 05-6103, 2011 WL 8006963, at *27 (C.D. Cal. Nov. 30, 2011), *magistrate judge's report adopted*, No. CV 05-6103 (C.D. Cal. June 11, 2012).  The remaining statements, although somewhat emotional, did not ask the jury to convict out of sympathy for the victims or appeal to the jury to act as the

18

conscience of the community.  On the contrary, viewed in context the prosecutor's comments were based on the evidence presented at trial.  Even if improper the prosecutor's references to the victim were much less prejudicial than other comments referring to victims which have been upheld on habeas review.  *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999) (en banc).  "Indeed, *Darden* itself held that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief."  *Parker*, ___ S. Ct. at ___, 2012 WL 2076341, at *6 (citing *Darden*, 477 U.S. at 180, nn. 11 & 12 (prosecutor referring to defendant as an "animal" and stating "I wish I could see [the defendant] with no face, blown away by a shotgun.")).  Finally, any potential prejudice was cured by the trial court's instruction to the jury that it must decide the case solely on the evidence and "must not let sympathy or prejudice influence your decision."  Trial Tr., Vol. IV, at 3; *see Baylor v. Renico*, No. 05-CV-71624, 2009 WL 982212, at *7 (E.D. Mich. Apr. 13, 2009) (Hood, J.); *Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999) (Cleland, J.).

Petitioner next argues that the prosecutor committed misconduct by appealing to the jury's sense of civic duty.  With respect to this claim, petitioner points to the prosecutor's comment that justice must be done and that the jurors were "the ones that has [sic] it in your hands."  Trial Tr., Vol. III, at 147.  Petitioner also points to the prosecutor's comments regarding the epidemic of

violence in society, *see id*. at 152, and the statement during rebuttal argument that the jury should "give [the victim] the justice he deserves," *id*. at 202. The Michigan Court of Appeals determined that these statements were improper under state law, but that petitioner was not entitled to relief because they were not prejudicial in light of the strong evidence of petitioner's guilt and the trial court's instructions to the jury that the statements of counsel are not evidence and that the prosecution was required to prove petitioner's guilty on each element beyond a reasonable doubt. *See Hale*, 2003 WL 22961696, at *3-*4. This determination was reasonable. A "civic duty" argument is one which "encourages the jury to convict the defendant based upon principles of protection of the community and encourages them to ignore the evidence in the case." *United States v. Mejorado-Soto*, No. 94-2404, 1995 WL 764115, at *2 (6th Cir. Dec. 27, 1995) (per curiam). Here, the prosecutor did not encourage the jury to convict by ignoring the evidence. The prosecutor's statement that the jury had justice "in [its] hands" was in the context of explaining the importance of the jury's duty and the need to take it seriously. *See* Trial Tr., Vol. III, at 147-48. The prosecutor's comment regarding the epidemic of violence was in the context of a discussion concerning the senselessness of this particular murder, and was immediately followed by the prosecutor's admonition that this was not something that the jury could solve, and that the jury should take its responsibility seriously even if the victim "was being a jerk" by hitting petitioner with the gun. *See id*. at 152-53. And the prosecutor's comment that the jury should give the victim "the justice he deserves" was made in the context of the prosecutor arguing that, even if the jury found that petitioner did not commit a premeditated murder, it should consider the lesser offenses which it would be instructed on. "A prosecutor does not overstep the bounds of propriety by appealing to the jurors' sense of justice." *Fuller v. Lafler*, 826 F. Supp. 2d 1040, ___, 2011 WL

4837495, at *16 (E.D. Mich. 2011) (Lawson, J.) (citing *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009)). Even if improper, viewed in context the comments were only mildly so, and in light of the overwhelming evidence and the trial court's instruction to the jury that its verdict should be based on the evidence and the law and not on sympathy the arguments were not so prejudicial as to deprive petitioner of a fair trial. *See Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003) (Gadola, J.).

Finally, petitioner contends that the prosecutor improperly vouched for the evidence and injected the prosecutor's personal belief into the proceedings by stating during closing argument: (1) "And I would suggest to you that . . . there's no doubt, at all, that this man murdered Nelson Hardiman," Trial Tr., Vol. III, at 149; and (2) "the ingredient that's missing for a not guilty verdict is reasonably doubt, because there's not any reasonable doubt that the Defendant is the one that murdered Nelson Hardiman," *id*. at 190. These statements were not improper. Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[2] Here, the prosecutor did not indicate a personal belief in any witness's credibility or petitioner's guilt, or suggest knowledge of facts not before the jury. The prosecutor's comments were made in the context of discussing the evidence supporting petitioner's guilt, and thus were merely a proper argument that the evidence

---

[2]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

established that petitioner was guilty of first degree murder.

In short, the Michigan Court of Appeals thoroughly analyzed each of petitioner's prosecutorial misconduct claims, applying the appropriate due process test under *Darden*. For the reasons set forth above, the Michigan Court of Appeals's application of that test was reasonable. "[B]ecause the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations,' [this Court] ha[s] no warrant to set aside the [Michigan Court of Appeals's] conclusion." *Parker*, ___ S. Ct. at ___, 2012 WL 2076341, at *6 (citation omitted) (quoting *Yarborough*, 541 U.S. at 664). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on petitioner's prosecutorial misconduct claims.

G.     *Blakely* (Claim I)

Petitioner next contends that the trial court's sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the

maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id.* at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id.* at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines and departed from the guideline range, his sentence violates *Blakely* and *Apprendi*. However, Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant

23

is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the various charges, therefore, contained all of the factual findings necessary to impose the statutory maximums on those charges. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will

always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentences did not violate *Blakely*. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme,

under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at \*3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at \*2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.   *Ineffective Assistance of Counsel (Claims VI & VII)*

Finally, petitioner contends that counsel was ineffective in a number of respects. Specifically, in Claim VI petitioner contends that his trial counsel was ineffective for failing to object to the prosecutorial misconduct and for failing to properly argue the motion for a directed verdict by pointing out the trial court's error in finding that the victim may have been unarmed. In Claim VII, petitioner contends that his appellate counsel was ineffective for failing to raise on direct appeal the claims that petitioner raised in his motion for relief from judgment. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.   *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for

a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.

27

*Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

   Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

   2.   *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to properly argue his motion for a directed verdict, specifically by failing to challenge the trial court's finding that the evidence supported a finding that the victim was unarmed at the time he was shot. Ordinarily, to show that he was prejudiced by counsel's failure to move for a directed verdict, a petitioner must show that the evidence adduced at trial was constitutionally insufficient to sustain his conviction. *See Hurley v. United States*, 10 Fed. Appx. 257, 261 (6th Cir. 2001); *Maupin v. Smith*, 785 F.2d 135, 140 (6th Cir. 1986); *Burston v. Caldwell*, 506 F.2d 24, 28 (5th Cir. 1975). Here, counsel did in fact move for a directed verdict. As explained above, petitioner was acquitted of the first degree murder charge, and there was no prejudice from the submission of that charge to the jury. As also explained above,

28

the evidence was sufficient to prove petitioner's guilt of second degree murder beyond a reasonable doubt, and this is so even assuming that the evidence conclusively established that the victim was armed at the time he was shot by petitioner.  Thus, trial counsel's additional argument to the court pointing out that the evidence would not support a finding that the victim was unarmed would not have resulted in a granting of the motion, and petitioner therefore cannot show that he was prejudiced by counsel's omission.

Likewise, as explained above, petitioner cannot show that the prosecutor's comments, even if improper, were sufficiently prejudicial to deprive him of a fair trial.  It therefore follows that petitioner was not prejudiced by counsel's failure to object to the comments.  *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

2.   *Appellate Counsel*

Petitioner also contends that appellate counsel was ineffective for failing to raise each of his motion for relief from judgment claims on direct appeal.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

In evaluating the performance of appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing  *Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring

29

a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*. As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

Here, counsel raised two significant issues on direct appeal, the latter of which resulted in the Michigan Court of Appeals vacating petitioner's sentence and remanding for resentencing, which in turn resulted in a reduction of seven years' imprisonment on petitioner's minimum term. Petitioner has not shown that the claims he presents here are clearly stronger that the claims raised by counsel on direct appeal. Further, as explained above, petitioner has failed to show that any of his claims have merit, and thus he cannot establish a reasonable probability that his claims would have succeeded on direct appeal.[3] Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his appellate counsel claim.

---

[3]Petitioner also asserts that his appellate attorneys, both on the initial appeal and on the appeal after resentencing, were ineffective for failing to appeal the prosecutorial misconduct issues to the Michigan Supreme Court. As the Supreme Court has explained, other than proceedings governed by the Sixth Amendment right to effective assistance of counsel, "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (internal quotation omitted). An appeal to the Michigan Supreme Court is discretionary, and a defendant has no constitutional right to counsel in a discretionary appeal. *See Wainwright v. Torna*, 455 U.S. 586, 587 (1982) (per curiam); *Ross v. Moffitt*, 417 U.S. 600, 619 (1974). Thus, petitioner cannot establish that counsel was ineffective for failing to advice him to raise the prosecutorial misconduct claim in his discretionary appeal to the Michigan Supreme Court. *See Wainwright*, 455 U.S. at 587-88 (counsel's failure to file application for discretionary appeal cannot constitute ineffective assistance of counsel).

I.      *Evidentiary Hearing*

In his reply brief, petitioner requests an evidentiary hearing, apparently so that the ballistics evidence in his case can be retested.  In support of his request, petitioner points to the fact that the Detroit Police Crime Lab's firearms unit was shut down in 2008 due to its mishandling of ballistics evidence and testing.   In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) is a hearing is permitted under 28 U.S.C. § 2254(e)(2).  In deciding whether an evidentiary hearing is necessary under  Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963).  As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted).

Here, petitioner cannot establish that an evidentiary hearing would have the potential to advance his claims.  None of petitioner's claims is based on the ballistics evidence.  The closest

petitioner comes to tying the ballistics issue to the issues in his case is to argue that the ballistics evidence was part of the evidence supporting his conviction and, if that evidence were unreliable, there would not have been sufficient evidence to convict him of second degree murder. This argument is untenable, however. While the erroneous admission of evidence may, or may not, entitle a habeas petitioner or appellant to relief on that basis, in assessing the sufficiency of the evidence the Court is required to weigh all of the evidence, even that evidence which was improperly admitted. *See United States v. Carneglia*, 47 Fed. Appx. 27, 34-35 (2d Cir. 2002); *United States v. Castaneda*, 16 F.3d 1504, 1510 (9th Cir. 1994); *cf. Lockhart v. Nelson*, 488 U.S. 33, 38-39 (1988) (in assessing whether the evidence was sufficient for purposes of determining whether retrial is permitted under the Double Jeopardy Clause, court looks at all of the evidence admitted, even that which was improperly admitted).

Petitioner also asserts that he is actually innocent of second degree murder, a fact that would be supported by a retesting of the ballistics evidence, but actual innocence does not provide a basis for habeas relief. A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added);

*Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); *Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).[4] Further, petitioner fails to explain how a retesting of the ballistics evidence would establish his innocence. Although there was ballistics evidence presented at trial, there was no dispute that (a) the victim never fired a gun, (b) some third party did fire a shot into the air, startling victim and possibly petitioner, and (c) petitioner fired the shots that struck the victim, including the multiple shots petitioner fired into the victim as he lay on the ground. The testimony of the witnesses was uniform

---

[4]In *Herrera* and again in *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court noted that it might be the case that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief," but explicitly declined to determine whether this is, in fact, the constitutional rule. *Herrera*, 506 U.S. at 417; *see also*, *House*, 547 U.S. at 555. This rule affords no basis for relief to petitioner, however. First, as *Herrera* makes clear this rule is limited to the context of executing an innocent person, and has no applicability in a non-capital case. *See Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Wright*, 247 Fed. Appx. at 711. Second, because the Supreme Court has recognized that the question whether there exists a "federal constitutional right to be released upon proof of 'actual innocence' . . . is an open question," *District Attorney's Office for the 3d Jud. Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009), a state court's failure to grant relief on the basis of actual innocence cannot be contrary to or an unreasonable application of any clearly established federal law under § 2254(d)(1). *See Reyes v. Marshall*, No. CV 10-3931, 2010 WL 6529336, at *3 (Aug. 23, 2010), *magistrate judge's report adopted*, 2011 WL 1496376 (C.D. Cal. Apr. 14, 2011). *See generally*, *Murdoch v. Castro*, 609 F.3d 983, 994 (9th Cir. 2010) (state court's failure to grant relief on basis which Supreme Court has recognized is an open question cannot be unreasonable application of clearly established law); *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002) (same).

on these points, and the ballistics evidence did not play a significant role in establishing petitioner's guilt.

Further, even assuming an evidentiary hearing were otherwise necessary under Rule 8, one is not permitted by § 2254(e)(2). Pursuant to 28 U.S.C. § 2254(e)(2), "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is not permissible because petitioner has "failed to develop the factual basis" of his ineffective assistance claim in the state courts. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[5] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id.* at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. Here, petitioner has never raised a claim relating to the ballistics evidence in the state courts. His motion for relief from judgment and the appellate briefs filed in connection with that proceeding do not mention the ballistics evidence or any claim relating to that evidence. Thus, petitioner is not entitled to an evidentiary hearing, even if one were otherwise necessary.

Finally, to the extent petitioner seeks an evidentiary hearing to develop facts in support of the claims that he did raise in the state courts and in his habeas petition, such a hearing is not necessary under Rule 8. Petitioner's sufficiency of the evidence, prosecutorial misconduct, and

---

[5]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d). Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name—"Michael Williams"—rather than just by "Williams" as is the ordinary citation convention. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

sentencing claims are all claims that are based on, and resolvable by reference to, the record of the trial and sentencing proceedings.  No further factual development would bear on the resolution of these claims.  Further, although an evidentiary hearing could develop facts with respect to the performance prong of his ineffective assistance claims, as explained above those claims are readily resolved on the prejudice prong of the *Strickland* test, which does not require further factual development.  Accordingly, the Court should deny petitioner's request for an evidentiary hearing.[6]

J.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never

---

[6]Because an evidentiary hearing is not necessary under Rule 8, the Court need not consider whether an evidentiary hearing would have any utility in light of the Supreme Court's recent decision in *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (holding that, with respect to any claim adjudicated on the merits to which § 2254(d) applies, the federal court's review is limited to the record that was in existence at the time of the state court decision).

issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

   2.   *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the

Court should also deny petitioner a certificate of appealability.  As explained above, the trial court's resolution of petitioner's motion for a directed verdict raises no federal constitutional claim, and under the deferential *Jackson* standard it is clear that the prosecution presented sufficient evidence to prove petitioner's guilt beyond a reasonable doubt.  Thus, the resolution of these claims is not reasonably debatable.  Further, for the reasons explained above, the resolution of petitioner's prosecutorial misconduct claims is not reasonably debatable.  Because *Blakely* does not implicate Michigan's indeterminate sentencing scheme, the resolution of petitioner's *Blakely* claim is not reasonably debatable.  Finally, because the resolution of petitioner's underlying claims is not reasonably debatable, it follows that the conclusion that petitioner was not prejudice by counsel's performance is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

K.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 6/19/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on June 19, 2012.
>
> s/Eddrey Butts_____
> Case Manager

38